UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**PHILLIP TAYLOR HIBBS**                                                                                 **PLAINTIFF**

**v.**                                                              **CIVIL ACTION NO. 4:16-CV-P58-JHM**

**HENDERSON DETENTION CENTER** *et al*.                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Phillip Taylor Hibbs, a prisoner incarcerated in the Henderson County Detention Center (HCDC), filed a *pro se* complaint under 42 U.S.C. § 1983. This matter is before the Court for initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). For the reasons that follow, the Court will allow the following two claims to proceed: (1) the Eighth Amendment claim against Defendant Gray in his individual capacity regarding the lack of bathroom breaks; and (2) the Eighth Amendment claim against Defendant Gray in his individual capacity regarding forcing Plaintiff to work despite Plaintiff being injured. The remaining claims as well as Defendants HCDC, Herrington, and Davis will be dismissed from this action.

### I. SUMMARY OF CLAIMS

Plaintiff identifies four Defendants in this action: (1) HCDC; (2) Ron Herrington, Jailer at HCDC; (3) Kevin Gray, "Road crew leader" at HCDC; and (4) Dr. Henry Davis, a physician with HCDC and Southern Health Partners. Plaintiff sues Defendants in their individual and official capacities. As requested relief, Plaintiff states, "Let the courts decide what is FAir For my Rights being violAted and embarresment."

In his complaint, Plaintiff states that Defendant Gray would not allow him to take appropriate restroom breaks while at work weed eating. According to Plaintiff, Defendant Gray told him that he would have to "urinAte in a bottle After others in the vAn," and, if he needed to move his bowels, he would have to "Hold it." Plaintiff states that this caused

> [him] to [illegible] it in my Pants a lil trying to hold it in Embarrising ME." Plaintiff also alleges that Defendant Gray is "Not Allowing [him] to tAke breaks as Needed when over Heated or ExhAusted. Keeps pushing [him] to the Fullest sAying they Have A dead line, per the city to get the clover leAfs done. Causing [him] to Feel As IF [he is] going to pAss out And putting mAny Blisters and stone bruising on the bottom of [his] Feet.

Plaintiff states that he does not have the proper footwear to "weed eat[] the city's clover leafs." Plaintiff asserts that the lack of proper footwear caused another inmate to slip and hit Plaintiff with the weedeater "put[ing] 18 lashes across the back of [his] leg caus[ing him] to FAll forwArd JAmming [his] Arm up Brusing [his] Leg Real bad and swelling." Plaintiff states that "MedicAl keeps on putting me off to be seen by the doctor MAny Doctor Request put in. Several Times medicAl sd I wAs going to be seen by the doctor per Dr. Davis to try and Figure out whAt is wrong to tAke the Next step 'Nothing done.'" Plaintiff states that a few days after the accident, Defendant Gray "insisted that [he] go back to work. Even though [Plaintiff] had A medicAl slip in and Not been seen by the Nurse yet." Plaintiff states that by making him work this day caused his "Arm and shoulder to Hurt MoRe and leg swelling."

According to Plaintiff, on April 11, 2016, Defendant Gray "tried to force [him] to work AgAin AgAinst medicAl Advice." Plaintiff states that he "even HAd proof Not too And HAd the documents from -4-10-16-From medicAl not to work." Plaintiff states that he was not going to further hurt himself, so Defendant Gray "got mAd and HAd [him] plAced on the mAin side of detentioN center locked down." Plaintiff asserts that he "wAs then being punished for

Exercising my Rights Not to work per medicAl From causing myself Further pain From the injury."

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d at 608.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create

a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. ANALYSIS

#### A. Official-Capacity Claims

Plaintiff sues all Defendants in both their individual and official capacities. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)). Plaintiff's official-capacity claims against Defendants Herrington, Gray, and Davis are actually against their employer, Henderson County. *Id.* at 166; *see also Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county). Moreover, HCDC is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. In this situation, it is Henderson County that is the proper defendant. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge

Executive as claims against Jefferson County itself). The Court will therefore construe the official-capacity claims as claims brought against Henderson County.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

Simply stated, "a plaintiff must 'identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of

the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, as to Plaintiff's claims, he has not alleged that a municipal policy or custom caused his alleged harm. As nothing in the complaint demonstrates any purported wrongdoing occurred as a result of a policy or custom implemented or endorsed by Henderson County, the complaint fails to establish a basis of liability against the municipality, and it fails to state a cognizable § 1983 claim.

Accordingly, the official-capacity claims against Defendants will be dismissed for failure to state a claim.

### B. *Individual-Capacity Claims*

#### 1. *Defendant HCDC*

Individual-capacity suits, also known as personal-capacity suits, "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The individual-capacity designation is not applicable to a Defendant which is not an individual since no personal liability is involved.

Accordingly, the individual-capacity claims against HCDC will be dismissed for failure to state a claim. Further, there being no remaining claims against HCDC, HCDC will be dismissed from this action.

#### 2. *Defendant Herrington*

"It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder." *Cox v. Barksdale*, No. 86-5553, 1986 WL

18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed , even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

Having failed to allege any conduct on the part of Defendant Herrington that violates Plaintiff's rights, the claims against him in his individual capacity will be dismissed from this action for failure to state a claim upon which relief may be granted. Further, there being no remaining claims against him, Defendant Herrington will be dismissed from this action.

### 3. *Defendant Davis*

Plaintiff alleges that "MedicAl keeps on putting [him] off to be seen by the doctor . . . . Several times medicAl sd [he] wAs going to be seen by the doctor per Dr. Davis to try and Figure out whAt is wrong to tAke the Next step 'Nothing done.'" Plaintiff states that he could have "a serious medicAl issue concerning [his] Arm and shoulder From the injury." Elsewhere in the complaint, Plaintiff states that he was told "not to work per medicAl" and that on April 10, 2016, medical gave him documents stating that he was not to work.

Other than one reference to Defendant Davis, Plaintiff makes no allegations against him. It appears from the allegations made by Plaintiff, that Defendant Davis told Plaintiff that he

wanted Plaintiff to be seen by another doctor to "[f]igure out whAt is wrong to tAke the Next step." If the complaint is read in this way, the individual-capacity claim against Defendant Davis fails since Plaintiff does not allege any conduct on the part of Defendant Davis that caused Plaintiff's alleged harm. *Potter v. Clark*, 497 F.2d at 1207 ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed , even under the liberal construction to be given pro se complaints.").

In the alternative, Plaintiff fails to state an Eighth Amendment medical claim. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from deliberate indifference to an inmate's serious medical needs since such indifference constitutes the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010). "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106; *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002).

An Eighth Amendment claim consists of both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Flanory v. Bonn*, 604 F.3d at 253. The objective component requires that the medical need be sufficiently serious. *Hudson v. McMillian*, 503 U.S. at 8; *Hunt v. Reynolds*, 974 F.2d 734, 735 (6th Cir. 1992). This component is contextually driven and is responsive to "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. at 8 (citation omitted). The subjective component requires that the official's conduct be deliberately indifferent to Plaintiff's needs. *Farmer v. Brennan*, 511 U.S. at 828; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Hunt v. Reynolds*, 974

F.2d at 735. Deliberate indifference is a "state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. at 835.

"To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. at 837). "The requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id.* (citing *Estelle v. Gamble*, 429 U.S. at 106; *Farmer v. Brennan*, 511 U.S. at 835).

Not every claim of inadequate medical treatment states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. at 105. Neither negligent medical care nor delay in medical care constitutes a constitutional violation without deliberate indifference resulting in substantial harm. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) ("Accidents, mistakes, negligence and medical malpractice are not constitutional violations merely because the victim is a prisoner. Neither negligent medical care nor delay in medical care constitutes a violation of the Eighth Amendment unless there has been deliberate indifference, which results in substantial harm.") (citations omitted); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("Succinctly stated, negligent medical care does not constitute a valid section 1983 claim. Further, delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."). Furthermore, a difference of opinion between the inmate and the prison medical official(s) concerning diagnosis or treatment does not constitute a constitutional violation. *Estelle v. Gamble*, 429 U.S. at 107; *see also*

*Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989) ("A difference of opinion does not amount to a deliberate indifference to . . . serious medical needs."); *Shofner v. Comacho*, No 99-6717, 2000 WL 1359633, at *2 (6th Cir. Sept. 14, 2000) ("A prisoner complaining of medical treatment received must establish something more than negligence or ordinary lack of due care. . . . [A] difference of opinion regarding medical treatment . . . is insufficient to state a claim under the Eighth Amendment.").

As to the objective component of his Eighth Amendment claim, Plaintiff states that he "could have a serious medical issue." For purposes of initial review, the Court will assume, without deciding, that Plaintiff has shown that his medical need, his injured arm and shoulder, was sufficiently serious. However, where his claim fails is with the subjective component of the Eighth Amendment claim.

Plaintiff clearly states that he was seen by medical because Plaintiff states that on April 11, 2016, he was given a slip from medical stating that he was not supposed to work. Further, Plaintiff states that on several occasions "medical" told him that he was going to be seen by a doctor to take the next stop and figure out what was going wrong. It is clear that Plaintiff did receive some medical care. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments." *Odom v. Hiland*, No. 5:13CV-P29-R, 2013 WL 2580296, at *2 (W.D. Ky. June 11, 2013) (citing *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). "[A] court will generally not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002).

For these reasons, the Eighth Amendment medical-treatment claim against Defendant Davis will be dismissed for failure to state a claim. Further, there being no remaining claims against him, Defendant Davis will be dismissed from this action.

### 4. Defendant Gray

#### a. Eighth Amendment Claims

The Eighth Amendment prohibits a punishment that violates civilized standards of decency or reflects unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. at 102-03. A viable Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. at 834. The objective component requires that the pain be sufficiently serious within the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. at 8 (internal quotation marks and citation omitted). The subjective component requires a plaintiff to show that the defendant acted with deliberate indifference to the inmate's health or safety, *i.e.*, the plaintiff must show that prison officials had a "sufficiently culpable state of mind," where the officials were aware of and disregarded an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834 (internal quotation marks and citation omitted).

First, Plaintiff claims that he was not allowed to take appropriate restroom breaks. As to this claim, Plaintiff states that Defendant Gray would not allow him to take appropriate restroom breaks while out working. According to Plaintiff, Defendant Gray told Plaintiff he would have to urinate in a bottle after other inmates had used the same bottle, and he would have to hold any bowel movement. According to Plaintiff he defecated in his pants "a lil" as a result of not being allowed to have appropriate restroom breaks.

Upon consideration, the Court will allow this claim to continue.

11

Plaintiff also contends that the inmates on work detail did not have proper footwear to perform the job of weed eating. Plaintiff states as a result of the improper footwear, another inmate slipped and "put 18 LAshes across the back of [his] leg From weedeater." According to Plaintiff, this caused him "to Fall forwArd JAmming [his] Arm up Brusing [his] Leg Real bad and swelling." As to this claim, Plaintiff fails to connect the lack of proper footwear to Defendant Gray. As previously stated, "To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights." *LeMasters v. Fabian*, 2009 WL 1405176, at *2.

Having failed to allege Defendant Gray's involvement in the choice of footwear, this claim fails and will be dismissed.

Plaintiff also alleges that he was not allowed appropriate breaks. Plaintiff contends that Defendant Gray refused to allow Plaintiff to "take breaks as Needed when over Heated or ExhAusted" . . . Causing [him] to Feel As If [he was] going to pAss out And putting mAny Blisters and stone bruising on the bottom of [his] feet." As to this claim, Plaintiff does not state that he ever passed out, but only that he got blisters and bruises on his feet from working.

"Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). As former Chief Justice Rehnquist remarked, "[i]n short, nobody promised [inmates] a rose garden . . . ." *Atiyeh v. Capps*, 449 U.S. 1312, 1315 (1981). It is unclear how the blisters and bruises on Plaintiff's feet relate to not receiving adequate breaks. Despite this, the Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v.*

*Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. See *Adams v. Rockafellow*, 66 F. App'x 584, 586 (6th Cir. 2003) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). There is nothing in Plaintiff's complaint to suggest that if he did suffer injury by being required to work without appropriate breaks that the injury was anything other than *de minimis*. See *Jarriett v. Wilson*, 162 F. App'x 394, 401 (6th Cir. 2005) (finding *de minimis* injury where a prisoner complained that his legs were swollen, he suffered pain while standing, and he had cramps in his thighs when trying to sit); *Corsetti v. Tessmer*, 41 F. App'x 753, 755 (6th Cir. 2002) (finding that two small bruises and minor cuts were clearly *de minimis*); *Siglar v. Hightower*, 112 F.3d at 193 (finding that a prisoner who alleged that he had a sore and bruised ear for three days did not meet § 1997(e) standard). Further supporting the *de minimis* nature of any injury is the absence of any allegation on the part of Plaintiff that he sought treatment for the blisters and bruises.

Accordingly, the claim regarding a lack of proper work breaks will be dismissed for failure to state a claim.

Plaintiff's final Eighth Amendment claim involves Defendant Gray allegedly forcing Plaintiff to work even though he had been injured. Plaintiff contends that a few days after the accident, Defendant Gray forced him to work even though he had a medical slip in and had not been seen by the nurse yet. Plaintiff states that working caused his arm and shoulder "to Hurt more and leg swelling."

Upon consideration, the Court will allow this claim to continue.

### b. Threat Claim

Plaintiff also makes a claim about being threatened. As to this claim, Plaintiff alleges that Defendant Gray threatened him "with Captain Duncan." Threats and verbal harassment do not give rise to a constitutional violation. *Ivey v. Wilson*, 832 F.2d at 955; *see also Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (acknowledging that "harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim.").

Accordingly, Plaintiff's claim that Defendant Gray threatened him "with Captain Duncan" will be dismissed for failure to state a claim.

### c. Transfer Claim

Lastly, Plaintiff alleges a claim regarding being transferred because he refused to work. According to Plaintiff, Defendant Gray tried to get him to work on April 11, 2016, even though he had documents from "medicAl not to work." Plaintiff states that he refused to work. According to Plaintiff this caused Defendant Gray to "get mAd" and have Plaintiff "pLAced on the mAin side of detention center locked down."

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at

least in part, by the protected conduct. *Id.* In the present case, Plaintiff fails to state any protected conduct in which he was engaged that resulted in the alleged retaliation. "[P]rotected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). Plaintiff states that he was transferred because he refused to work in accordance with documentation from medical. This refusal to work is not protected conduct for purposes of a First Amendment retaliation claim. Thus, Plaintiff's transfer does not constitute a First Amendment retaliation claim.

Further, this claim does not state a due process claim. Plaintiff states that he was placed "on the mAin side of detention center locked down." The Fourteenth Amendment prohibits any State from depriving "any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The point is straightforward: the Due Process Clause provides that certain substantive rights--life, liberty, and property--cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The first inquiry in a Fourteenth Amendment due process claim is whether the interest at stake is within the Fourteenth Amendment's protection. *Arnett v. Myers*, 281 F.3d 552, 564 (6th Cir. 2002); *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). "Only after reaching a conclusion that the interest claimed is within that protection does this court consider the form and nature of the process that is due." *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002).

"In order to determine whether segregation of an inmate from the general prison population involves the deprivation of a state-created liberty interest protected by the due process clause, courts are to determine if the segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (citing *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). "[U]nder *Sandin* a liberty interest determination is to be made based on whether it will affect the overall duration of the inmate's sentence . . . ." *Id.* Plaintiff does not allege that his placement in isolation affected the duration of his sentence nor does he set forth any allegations that the transfer imposed atypical or significant hardship in relation to the ordinary incidents of prison life. Thus, his allegation of placement "on the mAin side of detention center locked down" fails to allege any interest protected by the constitutional guarantee of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that a 61-day stay in administrative segregation was not atypical and significant); *Rogers v. Johnson*, 56 F. App'x 633, 636 (6th Cir. 2002) (finding that the prisoner's extended stay in administrative segregation did not give rise to a protected liberty interest); *Jones v. Baker*, 155 F.3d at 813 (finding that segregation for 30-months did not create a liberty interest violative of the Due Process Clause); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug. 11, 1999) (finding that neither eight months administrative segregation nor 14-days disciplinary segregation constituted an atypical and significant hardship on inmates); *Jackson v. Hopkins Cty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. Nov. 9, 2012) (finding that "[p]laintiff has not stated a due process claim because freedom from placement in segregation is not a protected liberty interest as it does not 'impose atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'").

For these reasons, Plaintiff's claim regarding placement "on the mAin side of detention center locked down" fails to state a constitutional violation and will be dismissed for failure to state a claim.

## ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** as follows: (1) the official-capacity claims will be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (2) the individual-capacity claim against Defendant HCDC will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (3) the individual-capacity claim against Defendant Herrington will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (4) the individual-capacity claim against Defendant Davis will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (5) the individual-capacity claim against Defendant Gray regarding improper footwear will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (6) the individual-capacity claim against Defendant Gray regarding lack of sufficient work breaks will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; (7) the individual-capacity claim against Defendant Gray regarding the threat will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and (8) the individual-capacity claim against Defendant Gray regarding transfer to the main part of the detention center will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, there being no remaining claims against them, Defendants **HCDC**, **Herrington**, and **Davis** are **DISMISSED** from this action. The **Clerk of Court** is **DIRECTED** to remove Defendants HCDC, Herrington, and Davis as Defendants from the docket of this case.

**IT IS FURTHER ORDERED** that the following claims shall proceed: (1) the Eighth Amendment claim against Defendant Gray in his individual capacity regarding the lack of bathroom breaks; and (2) the Eighth Amendment claim against Defendant Gray in his individual capacity regarding forcing Plaintiff to work despite Plaintiff being injured.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date: October 3, 2016

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: Plaintiff, *pro se*
     Defendants
4414.003