# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

**PHILLIP TAYLOR HIBBS**                                                                    **PLAINTIFF**

**v.**                                                **CIVIL ACTION NO. 4:16-CV-P58-JHM**

**HENDERSON COUNTY DETENTION CENTER** *et al*.                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for summary judgment[1] (DN 13) filed by Defendant Gray, the sole remaining Defendant in this action. Plaintiff has not responded to the motion despite the Court ordering (DN 21) him to do so. This matter is ripe for adjudication. For the reasons set forth below, Defendant's motion will be granted.

### I. SUMMARY OF CLAIMS

After performing initial review of this case, the Court allowed the following two claims to continue: (1) the Eighth Amendment claim against Defendant Gray in his individual capacity regarding the lack of restroom breaks; and (2) the Eighth Amendment claim against Defendant Gray in his individual capacity regarding forcing Plaintiff to work despite Plaintiff being injured (DN 6). Defendant seeks summary judgment as to both claims.

At the time he filed this action, Plaintiff was incarcerated at Henderson County Detention Center (HCDC).[2] In his complaint, as to the proceeding claims, Plaintiff stated that Defendant, who Plaintiff described as the "Road crew leader," would not allow Plaintiff to take appropriate

---

[1]Defendant states that he brings this motion pursuant to "CR 56.02." "CR 56.02" is a Kentucky Rule of Civil Procedure. This action is a federal action; thus, Rule 56 of the Federal Rules of Civil Procedure would be the appropriate comparable Rule. The Court construes this motion as being brought pursuant to Fed. R. Civ. P. 56.

[2]On December 1, 2016, Plaintiff indicated that his new address was at the Powell County Detention Center (PCDC). An inmate locator search on May 17, 2017, revealed that Plaintiff is no longer incarcerated at the PCDC. Thus, it is unclear where or if Plaintiff is still incarcerated.

restroom breaks while at work weedeating. According to Plaintiff, Defendant told him that he would have to "urinAte in a bottle After others in the vAn," and, if he needed to move his bowels, he would have to "Hold it." Plaintiff stated that this caused him "to [illegible] it in my Pants a lil trying to hold it in Embarrising ME."

As to the second proceeding claim, Plaintiff asserted in his complaint that while working another inmate slipped and hit Plaintiff with the weedeater "put[ing] 18 lashes across the back of [his] leg caus[ing him] to FAll forwArd JAmming [his] Arm up Brusing [his] Leg Real bad and swelling." Plaintiff stated that a few days after the accident, Defendant "insisted that [Plainitff] go back to work. Even though [Plaintiff] had A medicAl slip in and [had] Not been seen by the Nurse yet." Plaintiff stated that by insisting he work this day caused Plaintiff's "Arm and shoulder to Hurt MoRe and leg swelling."

Defendant denies that he violated Plaintiff's Eighth Amendment right. In support of his motion, Defendant has filed an affidavit, documents regarding the Community Service Program (CSP), Plaintiff's medical records, copies of grievances filed by Plaintiff, and a copy of an Incident Report.

According to an affidavit filed by Defendant, "[i]nmates participate in CSP on a voluntary basis and may remove themselves or be dismissed by prison officials from the program at any time." DN 13-3, p. 1. Plaintiff enrolled in the CSP on March 16, 2016. *Id*. CSP participants were, on average, given restroom breaks every 60-90 minutes. *Id*. "These breaks are given by ceasing community service activity, loading up the inmates and CSP equipment, and transporting the inmates back to HCDC or to a nearby public restroom." *Id*. Defendant states that he would allow additional restroom breaks if a CSP participant specifically asked for one. *Id*. Defendant states that soon after starting the CSP, Plaintiff was "frequently disruptive

and would attempt by various means to avoid actually performing his work duties." *Id*. One of the means Plaintiff used to avoid work was to request frequent restroom breaks while on a worksite. *Id*.

According to Defendant, Plaintiff took advantage of the restroom-break policy, "making so many restroom requests each day that CSP participants would spend more time being transported between the worksite and restrooms than actually working." *Id*. In an attempt to "combat this tactic" of Plaintiff, Defendant informed Plaintiff "that if he needed to urinate as frequently as claimed, he would need to do so in a water bottle on the worksite." *Id*. Defendant states that after this, Plaintiff "ceased his constant restroom requests and CSP was able to return to productively providing community service." DN 13-3, p. 2. Defendant states that Plaintiff never "actually urinate[ed] in a water bottle or any other container while on a worksite." *Id*. Further, Defendant states that HCDC policy required CSP participants to be strip-searched upon return to the institution and that this search included the "removal and inspection of each inmate's underwear." *Id*. Defendant conducted these searches. *Id*. Defendant states that at "no point during his participation in CSP did [Plaintiff] urinate or defecate on himself." *Id*.

Plaintiff asserts that while working, he was hit with the weedeater and fell forward hurting himself; the date of this event is unclear. Plaintiff's medical records show that on March 29, 2016, Plaintiff was seen by medical complaining that his left arm hurt and that he had some left arm pain, tingling, and numbness from a "fall/injury that was work related." DN 13-5. Plaintiff was given Ibuprofen and "taken off work till 4/6/16." *Id*. Plaintiff was seen by medical again on April 2, 2016, at which time he complained that he still had intermittent pain and tingling in his left shoulder and arm. Plaintiff further stated that Ibuprofen was not helping. *Id*. An examination was performed, and it was found that Plaintiff had full range of motion, with the

exception of a "slight grimace with backwards flexion of [the] extremity," no redness, no bruising, and no swelling. *Id*. Naproxen was ordered for Plaintiff, and Plaintiff was advised to stretch his arm with light exercise and to remain off work until April 9, 2016. *Id*. On April 10, 2016, the progress note states that Plaintiff still complained of weakness and pain that also involved his neck. The note further states, "will let Dr. Davis review." *Id*.

Defendant wrote an incident report on Plaintiff on April 11, 2016. *Id*. 13-7. The report states that Plaintiff was called out to work for the CSP crew, but Plaintiff stated that he no longer wanted to work. "Capt. Duncan was notified and a job dismissal was filled out." *Id*. The HCDC CSP Supervision Requirements for State Inmates states that it is considered misconduct if an inmate refuses to work. DN 13-4. On April 12, 2016, Plaintiff filed a grievance in which he alleged that he was being punished for exercising his right to stay off work per medical. He stated that he had a medical excuse to stay off work, and it was not fair for him to lose his preferred housing. DN 13-8. In response, Captain Hendricks wrote, "Spoke with inmate Explained Job Dismissal was required to remove from Work program medical or not. Inmate Moved To Main Due To Word's Reportedly Exchanged and would be returned to CSC when Bed available." *Id*.

On April 14, 2016, an x-ray was taken of Plaintiff's left shoulder which showed no evidence of fracture or dislocation of his cervical spine or left shoulder. DN 13-5. On April 18, 2016, Plaintiff still complained of shoulder and neck pain. DNs 13-95 & 13-9. He was to remain off work "for now." DN 13-5. Plaintiff was seen again by medical on April 26, 2016, at which time he continued to complain of left arm pain. Plaintiff stated that Ibuprofen and Naproxen were not working. It was noted that Plaintiff had full range of motion. Plaintiff was placed on the list to see the medical doctor. DN 13-9. On May 3, 2016, Plaintiff was seen by the

doctor who noted that Plaintiff refused an anti-inflammatory; however, the doctor recommended that Plaintiff try a non-steroidal anti-inflammatory medication for inflammation and pain for a time to help with his recovery. *Id*. On May 23, 2016, Plaintiff presented to medical stating that this medication was not helping and that he felt he was not being transferred to another facility because of his arm injury. He also requested to see a doctor to discuss his options. *Id*. That same date, Plaintiff was seen by the doctor who examined Plaintiff and found his range of motion was adequate, but that Plaintiff complained of pain. Plaintiff expressed that he was upset because he had been denied transfer to Hopkins County because he was under medical care and wanted to be released from medical. *Id*. This is the last entry in the medical records before the Court.

## II. SUMMARY OF ARGUMENTS

As to Plaintiff's proceeding claim regarding the lack of restroom breaks, Defendant argues that Plaintiff was given appropriate restroom breaks in compliance with Eighth Amendment requirements. Defendant states that Plaintiff made excessive requests for restroom breaks in order to keep from working, that Plaintiff never urinated in a bottle, and that Plaintiff never soiled his undergarments. As to Plaintiff's proceeding claim regarding Defendant forcing Plaintiff to work despite Plaintiff being injured, Defendant argues that he was not aware of and disregarded an excessive risk to Plaintiff's health or safety in violation of the Eighth Amendment. Defendant argues that Plaintiff did not have any evidence of an injury, but filed repeated medical complaints to try to be off work yet still be able to keep his preferred CSP housing. Defendant further argues that Plaintiff was not forced to work, but voluntarily worked.

As previously indicated, Plaintiff failed to respond to the motion for summary judgment; thus, he raises no arguments in response to those raised by Defendant.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252. Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*,

90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

When the non-moving party fails to respond, the Sixth Circuit has "made it clear on many occasions that a district court abuses its discretion when it grants summary judgment solely because the non-moving party has failed to respond to the motion within the applicable time limit." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998), and *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). "When a non-moving party fails to respond, therefore, the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Id.* (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d at 614).

## IV. ANALYSIS

### A. Eighth Amendment Lack of Restroom Breaks

In his complaint, Plaintiff stated that Defendant would not allow him to take appropriate restroom breaks while at work weedeating. According to Plaintiff, Defendant told him that he would have to "urinAte in a bottle After others in the vAn," and, if he needed to move his bowels, he would have to "Hold it." Plaintiff stated that this caused "[him] to [illegible] it in my Pants a lil trying to hold it in Embarrising ME."

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment prohibits cruel and unusual

7

punishments. U.S. Const. amend. VIII. A punishment is cruel and unusual when it violates civilized standards of decency or reflects unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). A viable Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component requires that the pain be sufficiently serious within the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (citation omitted). The subjective component requires a plaintiff to show that the defendant acted with deliberate indifference to the inmate's health or safety, *i.e.*, the plaintiff must show that prison officials had a "sufficiently culpable state of mind," where the officials were aware of and disregarded an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834 (citation omitted).

According to the undisputed documents before the Court, CSP participants were, on average, given restroom breaks every 60-90 minutes. These breaks were given by ceasing community service activity, loading up the inmates and CSP equipment, and transporting the inmates back to HCDC or to a nearby public restroom. Additional restroom breaks were allowed if a CSP participant specifically asked Defendant for one. Plaintiff was frequently disruptive and would attempt by various means to avoid performing his work duties. One of the means Plaintiff used to avoid work was to request frequent restroom breaks while on a worksite. According to Defendant, Plaintiff took advantage of the restroom-break policy, making so many restroom requests each day that CSP participants would spend more time being transported between the worksite and restrooms than actually working. In an attempt to combat this tactic of Plaintiff, Defendant informed Plaintiff that if he needed to urinate as frequently as claimed, he would need

8

to do so in a water bottle on the worksite. After this, Plaintiff stopped constantly requesting restroom breaks, and the CSP was able to return to productively performing its jobs.

Further, although instructed he would have to do so, there is no evidence that Plaintiff ever urinated in a water bottle or any other container while on a worksite. HCDC policy required CSP participants to be strip-searched upon return to the institution; this search included the removal and inspection of each inmate's underwear. Defendant searched Plaintiff's underwear upon his return to the institution. Defendant never found any evidence that Plaintiff urinated or defecated in his underwear. Plaintiff's general illegible allegation in his complaint, that he did something in his pants "a lil," without more, is insufficient to create a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49 (requiring that, once the moving party meets his burden, the non-moving party cannot rest on its pleadings, but must present "significant probative" evidence in support of the complaint to defeat the motion). Additionally, Plaintiff did not assert that he has a physical condition or ailment that necessitated him needing more frequent use of the restroom.

Clearly, the undisputed facts in this case do not assert a constitutional violation. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (finding that the failure to provide plaintiff with a working toilet did not fall "beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency"); *Hartsfield v. Vidor*, 199 F.3d 305, 309-10 (6th Cir. 1999) (holding that denying plaintiff the "use of a toilet, allowing him to sit in his own urine and . . . not providing [him] fresh drinking water for two 8-hour periods" was not cruel and unusual punishment); *Stephens v. Carter Cty. Jail*, No. 86-5565, 1987 WL 36997, at *1 (6th Cir. Apr. 10, 1987) (finding that depriving plaintiff of fresh water and access to a toilet for a 20-hour period was harsh, but not cruel and unusual). Plaintiff having

9

failed to set forth undisputed material facts that Defendant's actions violated the Eighth Amendment, summary judgment must be granted in favor of Defendant on this claim.

### B. Eighth Amendment Forcing Plaintiff to Work

As to this proceeding claim, Plaintiff asserted that another inmate slipped and hit Plaintiff with a weedeater "put[ing] 18 lashes across the back of [his] leg caus[ing him] to FAll forwArd JAmming [his] Arm up Brusing [his] Leg Real bad and swelling." Plaintiff stated that a few days after the accident, Defendant "insisted that [Plaintiff] go back to work. Even though [Plaintiff] had A medicAl slip in and Not been seen by the Nurse yet." Plaintiff stated that by making him work this day, his "Arm and shoulder . . . Hurt MoRe and [Plaintiff had] leg swelling."

As previously stated, the Eighth Amendment prohibits cruel and unusual punishments. U.S. Const. amend. VIII. A punishment is cruel and unusual when it violates civilized standards of decency or reflects unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. at 102-03. A viable Eighth Amendment claim has both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. at 834. The objective component requires that the pain be sufficiently serious within the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. at 8 (citation omitted). The subjective component requires a plaintiff to show that the defendant acted with deliberate indifference to the inmate's health or safety, *i.e.*, the plaintiff must show that prison officials had a "sufficiently culpable state of mind," where the officials were aware of and disregarded an excessive risk to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. at 834 (citation omitted). "Proving that a defendant had a sufficiently culpable state to make him liable for deliberate indifference is the plaintiff's burden." *Jones v.*

*Michigan*, 698 F. Supp. 2d 905, 914 (E.D. Mich. 2010) (citing *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Plaintiff enrolled in the CSP on March 16, 2016. Plaintiff has presented no documents or evidence to show the date on which he alleges he fell while working or the date on which he alleges Defendant insisted Plaintiff work despite his injury. Plaintiff does say that Defendant insisted he work while he had a medical slip in and prior to being seen by a nurse. Plaintiff was first seen by medical on March 29, 2016. Thus, the event about which Plaintiff complains must have occurred sometime between March 16, 2016, the date he enrolled in the CSP, and March 29, 2016, the date he was first seen by medical for the alleged work injury. Plaintiff has not presented any evidence that during this time period Defendant was aware of and disregarded an excessive risk to Plaintiff's health or safety.

Plaintiff's medical records show that although Plaintiff complained of pain, tingling, and numbness as a result of a work-related fall, medical exams performed on Plaintiff showed full range of motion, no redness, no bruising, and no edema. An x-ray found no evidence of any fractures or dislocation. Although Plaintiff was treated with analgesics and anti-inflammatory medication for his complaints of pain, Plaintiff was never diagnosed with any medical condition. Thus, there is no evidence that Plaintiff working would subject him to an excessive risk to his health or safety.

Further, Plaintiff alleged in his complaint that Defendant insisted that Plaintiff go back to work despite Plaintiff's injury. However, Plaintiff has not presented any evidence or documentation to support this allegation or which shows that Defendant in some way forced Plaintiff to work knowing that it would present an excessive risk to Plaintiff. Defendant has shown that Plaintiff participated in the CSP on a voluntary basis and could remove himself from

the program at any time. There is no evidence that Plaintiff asked to be removed from the program during this time, but was denied such a request. There are also no facts supporting the allegation that Defendant insisted he work, just Plaintiff's unsupported allegation.

There is no evidence or documentation showing that Defendant was aware of and disregarded an excessive risk to Plaintiff's health or safety. Plaintiff has failed to meet his burden of showing that Defendant had a sufficiently culpable state of mind to support deliberate indifference. Thus, Plaintiff failed to support an Eighth Amendment claim or present document showing a genuine issue of a material fact as to such a claim, and summary judgment must be granted in favor of Defendant.

## V. ORDER

For the reasons stated above, **IT IS ORDERED** that Defendant's motion for summary judgment (DN 13) as to the remaining claims in this action, the Eighth Amendment lack of sufficient restroom breaks claim and the Eighth Amendment forcing Plaintiff to work claim, is **GRANTED**.

Date: May 30, 2017

Joseph H. McKinley, Jr., Chief Judge
United States District Court

cc: Plaintiff, *pro se*
    Counsel of record
4414.003